UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KRISTOFFER ROBERTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:16-cv-11394-MGM |
| | ) |
| TIME WARNER CABLE, INC., | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER REGARDING DEFENDANT TWC
ADMINISTRATION LLC'S MOTION FOR PROTECTIVE ORDER
(Dkt. No. 28)
June 30, 2017

ROBERTSON, U.S.M.J.

Defendant Time Warner Cable, Inc. ("Defendant") has moved this court for the entry of a protective order pursuant to Fed. R. Civ. P. 26(c). Plaintiff Kristoffer Roberts ("Plaintiff") opposes entry of a protective order in the form proposed by Defendant. Because Defendant has not shown that its proposed order is necessary to protect it from annoyance, embarrassment, oppression, or undue burden or expense, the motion is denied.

I.  Background

Eight plaintiffs – Walter Sicotte, Maurice Peoples, Nathaniel Brookman, James Kratka, Andrew Fudge, Kristoffer Roberts, Kevin Majors, and Jesse Polo – (collectively, "the Pittsfield Plaintiffs") filed separate cases against Defendant in the Berkshire County Superior Court for the Commonwealth of Massachusetts, all asserting claims for violation of Mass. Gen. Laws ch. 151, § 1B (the Massachusetts statute governing pay for overtime work), violation of Mass. Gen. Laws ch. 149, § 148 (the Massachusetts Wage Act), breach of contract, and unjust enrichment for failing to pay them for time spent working both before and after their scheduled shifts and during

their unpaid lunch periods. Defendant removed the cases (referred to collectively as "the Pittsfield Cases") to federal court based on diversity of citizenship.[1] Defendant now moves this court for entry of protective order preventing Plaintiff from disseminating discovery material that he obtains from Defendant to any of the other Pittsfield Plaintiffs absent Defendant's agreement or a court order. Defendant seeks entry of substantially the same protective order in each of the Pittsfield Cases.

Specifically, by its proposed protective order, Defendant seeks to divide discovery material that it produces into two categories.[2] One category would consist of discovery material that Defendant designates as "Common Litigation Material," which Defendant agrees could be reviewed and used by counsel and the Pittsfield Plaintiffs in any of the Pittsfield Cases (Dkt. No. 28-2 at 2). The other category would consist of all other discovery material, which counsel and the Pittsfield Plaintiffs could use only in the particular Pittsfield Case (or Pittsfield Cases) in which Defendant produces it (*id*. at 3). Defendant's proposal includes a procedure whereby the Pittsfield Plaintiff (or Pittsfield Plaintiffs) to whom the material is produced could challenge Defendant's decision not to designate particular documents or information as Common Litigation Material (Dkt. No. 50 at 5). If the parties are unable to resolve their differences, within ten business days, Defendant could move for a court order preventing counsel and the

---

[1] The eight Pittsfield Cases include: *Sicotte v. Time Warner Cable, Inc.*, No. 3:16-cv-11392-MGM; *Peoples v. Time Warner Cable, Inc.*, No. 3:16-cv-11398-MGM; *Brookman v. Time Warner Cable, Inc.*, No. 3:16-cv-11395-MGM; *Kratka v. Time Warner Cable, Inc.*, No. 3:16-cv-11393-MGM; *Fudge v. Time Warner Cable, Inc.*, 3:16-cv-11396-MGM; *Roberts v. Time Warner Cable, Inc.*, 3:16-cv-11394-MGM; *Majors v. Time Warner Cable, Inc.*, No. 3:16-cv-11399-MGM; and *Polo v. Time Warner Cable, Inc.*, No. 3:16-cv-11400-MGM.

[2] By its terms, Defendant's proposal applies not only to discovery material that it produces, but also to discovery material that Plaintiff and any non-parties produce. However, because Plaintiff opposes entry of the order, the court speaks in terms of how Defendant's proposal would work vis-à-vis the discovery it produces.

2

Pittsfield Plaintiff (or Pittsfield Plaintiffs) to whom the material was produced from disclosing the material to any other Pittsfield Plaintiffs and preventing any other Pittsfield Plaintiffs from using the material in their cases. In the event Defendant seeks such court intervention, counsel and the Pittsfield Plaintiffs would be prohibited from treating the disputed material as Common Litigation Material to be shared with or used by any Pittsfield Plaintiffs other than those to whom it was produced, absent a court order to that effect.[3]

II. Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Pursuant to Rule 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or [any] person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party or person seeking a protective order, including an order limiting another party's right to disseminate information obtained in discovery, has the burden of demonstrating the existence of good cause. *Green v. Cosby*, No. 14-cv-30211-MGM, 2015 WL 9594287, at *4-5 (D. Mass. Dec. 31, 2015); *Baker v. Liggett Grp., Inc.*, 132 F.R.D. 123, 125 (D. Mass. 1990) (citing *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 6-7 (1st Cir. 1986)). "A finding of

---

[3] Defendant's initial proposal required the Pittsfield Plaintiff (or Pittsfield Plaintiffs) challenging the non-designation to move for court intervention in the event that the parties could not reach an agreement, but Defendant revised its proposal following the hearing on its motion, at which the court expressed concern about the burden the proposed procedure would put on the Pittsfield Plaintiffs. The proposed change does not eliminate concerns about the demands that likely would be made on the time and resources of the parties and the court if Defendant's proposed order were entered.

3

good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Baker*, 132 F.R.D. at 125 (quoting *Anderson*, 805 F.2d at 7).

    III.    <u>Analysis</u>

Defendant asserts that good cause exists for entry of the protective order it seeks on two grounds. First, Defendant posits that the order is necessary to ensure that the Pittsfield Plaintiffs are bound by Fed. R. Civ. P. 26(b)(1)'s rule limiting discovery to relevant matters. *Id*. According to Defendant, some of the material that it will produce in discovery is relevant in all of the Pittsfield Cases. By way of example, Defendant refers to its policies governing payment of overtime or prohibiting off-the-clock work. Defendant proposes to designate such materials as Common Litigation Material; because Common Litigation Material would be discoverable in all of the Pittsfield Cases individually, all of the Pittsfield Plaintiffs should be able to review and utilize it in their individual cases.[4] On the other hand, Defendant argues that some of the material that it will produce is relevant in only a single Pittsfield Case (or a subset of Pittsfield Cases), and counsel and the Pittsfield Plaintiffs should not be able to use that material in Pittsfield Cases other than the Pittsfield Case (or Pittsfield Cases) in which it is produced, absent a showing that the material would be independently discoverable (i.e. relevant) in their cases. Those are the documents and information that Defendant would not designate as Common Litigation Material, and the Pittsfield Plaintiffs could not treat them as such absent Defendant's subsequent agreement or a court order as described above.

---

[4] According to Defendant's definition, "Common Litigation Material" would include: "(1) relevant handbooks; (2) relevant employment policies; (3) relevant employment and timekeeping procedures; and (4) deposition testimony from a witness in another Pittsfield Case regarding direct, relevant knowledge of the facts, circumstances, and individual allegations related to Plaintiff in the instant action" (Dkt. No. 28-2 at 2-3).

Second, Defendant argues that good cause exists for entry of the order because some of the documents and information that it will produce are confidential in nature to the particular Pittsfield Plaintiff (or Pittsfield Plaintiffs) to whom Defendant will produce them. Based on this rationale, Defendant initially took the position that Common Litigation Material would not include "any individual or Plaintiff-specific information produced in any of the Pittsfield Cases" (Dkt. No. 28-2 at 3).[5] Following the hearing on Defendant's motion, however, each Pittsfield Plaintiff filed a notice consenting to the sharing with the other Pittsfield Plaintiffs of documents, data, and information produced by Defendant "related to [his] employment with Time Warner" (Dkt. No. 49). Defendant interprets the Pittsfield Plaintiffs' consents to encompass only those documents and information that fall within the definition of "personnel records" under Mass. Gen. Laws ch. 149, § 52C, and, based on those consents, no longer seeks to limit the Pittsfield Plaintiffs' ability to disseminate among themselves their employment applications and resumes; performance evaluations; disciplinary or corrective actions; and compensation information, including time records and pay records.[6] As to documents that "relate[ ] to [a particular

---

[5] Defendant's original proposal would have excluded the following from Common Litigation Material: "(1) any TWC/Charter employee time records, specifically including those of any plaintiff in the Pittsfield Cases; (2) any other TWC/Charter employee pay records, specifically including those of any plaintiff in the Pittsfield Cases; (3) any TWC/Charter employee personnel files and medical files, specifically including those of any plaintiff in the Pittsfield Cases; (4) investigation files related to the Pittsfield Cases; (5) any data or emails regarding any TWC/Charter employees, specifically including those related to any plaintiff in the Pittsfield cases; and (6) deposition testimony from a witness in any Pittsfield Case that does not directly relate to the facts, circumstances, and individual allegations in the instant action" (Dkt. No. 28-2 at 3).

[6] Section 52C defines a "personnel record" as "a record kept by an employer that identifies an employee, to the extent that the record is used or has been used, or may affect or be used relative to that employee's qualifications for employment, promotion, transfer, additional compensation or disciplinary action. …. [A]ll of the following written information or documents to the extent prepared by an employer … regarding an employee shall be included in the personnel record for that employee: the name, address, date of birth, job title and description; rate of pay and any other compensation paid to the employee; starting date of employment; the job application of the

5

Plaintiff's] employment with Time Warner" (in the words of the consents), but that do not fall within the definition of personnel records under Mass. Gen. Laws ch. 149, § 52C, Defendant argues that Plaintiffs' consents are irrelevant because Plaintiffs have no interest or control over them, and Defendant still seeks the ability to limit the disclosure and use of such documents to the Pittsfield Plaintiff (or Pittsfield Plaintiffs) to whom Defendant produces them. According to Defendant, these other documents and files would primarily include any communications and emails among a particular Pittsfield Plaintiff, management, or any other employee that do not constitute employment applications, employee work evaluations, disciplinary documentation, and promotion, demotion, or termination information, and documents that implicate the privacy interests of employees other than the Pittsfield Plaintiffs (Dkt. No. 50 at 4).

The court is not persuaded that Defendant has shown good cause for entry of a protective order on either relevancy or confidentiality grounds. "As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action." *Cherkaoui v. City of Quincy*, No. 14-cv-10571-LTS, 2015 WL 4504937, at *1 (July 23, 2015) (quoting *E.E.O.C. v. Electro-Term, Inc*., 167 F.R.D. 344, 346 (D. Mass. 1996)). "[B]ecause discovery itself is designed to help define and clarify the issues, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Green*, 2015 WL 9594287, at *2 (quoting *In re*

---

employee; resumes or other forms of employment inquiry submitted to the employer in response to his advertisement by the employee; all employee performance evaluations, including but not limited to, employee evaluation documents; written warnings of substandard performance; lists of probationary periods; waivers signed by the employee; copies of dated termination notices; any other documents relating to disciplinary action regarding the employee." Mass. Gen. Laws ch. 149, § 52C.

6

*New England Compounding Pharmacy, Inc. Products Liab. Litig.*, MDL No. 13-2419-FDS, 2013 WL 6058483, at *4 (D. Mass. Nov. 13, 2013)).

Here, in order for the Pittsfield Plaintiffs to prove their claims for unpaid overtime work against Defendant, each Pittsfield Plaintiff will have to prove both that he incurred unpaid overtime work and that Defendant "had actual or constructive knowledge that he was working overtime." *Vitali v. Reit Mgmt. & Research, LLC*, 36 N.E.3d 64, 69 (Mass. App. Ct. 2015) (quoting *Prime Commc'ns, Inc., v. Sylvester*, 615 N.E.2d 600, 601 (Mass. App. Ct. 1993)). "The knowledge inquiry requires an assessment of what the employer knew or should have known, and is to be made in view of the employer's 'duty … to inquire into the conditions prevailing in his business.'" *Id*. (alteration in original) (quoting *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969)).

Defendant takes the position that documents relating to one employee's pay and work hours are irrelevant, as a matter of law, to the defendant employer's actual or constructive knowledge of off-the-clock work by any other employee. This is inconsistent with the holding of the Massachusetts Appeals Court in *Vitali* that an employer's constructive knowledge can be based, at least in part, on the observable behavior of other employees with respect to off-the-clock work. *Id*. at 75. Because of this commonsense proposition, the *Vitali* court determined that the trial court erred in granting summary judgement to the defendant-employer where the summary judgment record supported the reasonable inference that, "armed with at least constructive knowledge that employees were undertaking lunch time work that should have been credited toward overtime, the [defendant] company went ahead and assumed in its favor that employees were not performing any such work except where they separately reported it through a process that [plaintiff] was never trained in, or even told to use." *Id*. Defendant argues

7

vehemently against this reading of *Vitali*, citing to decisions from other jurisdictions in *Jones v. Z.O.E. Enters. of Jax, Inc.*, No. 3:11-cv-377-J-32MCR, 2012 WL 3065384, at *1 (M.D. Fla. July 27, 2012), *Buckner v. United Parcel Serv., Inc.*, No. 5:09-CV-00411-BR, 2011 WL 6748522, at *1 (E.D.N.C. Dec. 22, 2011), and *Glorioso v. Williams*, 130 F.R.D. 664 (E.D. Wis. 1990), in which the courts denied the plaintiff-employees' motions to compel the defendant-employers to provide wage and time records regarding other non-party employees. These cases are neither controlling, nor persuasive. In contrast to the *Vitali* decision, which cogently addresses the potential relevance of evidence regarding other employees to the issue of the employer's constructive knowledge, none of the courts in the cases Defendant cites engage in any analysis, let alone one taking into account the liberal construction of relevancy that controls in the discovery stage, before simply declaring the sought-after wage and hour records not relevant. *Jones*, 2012 WL 3065384, at *2; *Buckner*, 2011 WL 6748522, at *4; *Glorioso*, 130 F.R.D. at 664-65. Defendant also cites to the subsequent decision of the Massachusetts Superior Court on remand in *Vitali*, No. SUCV2012-00588-BLS1, 2016 WL 1425725, at *7 (Mass. Super. Ct. Mar. 2, 2016), denying the plaintiff-employee's motion for class certification. Contrary to Defendant's argument, the trial court's conclusion that the claims of other hourly workers employed by the same defendant did not present common questions of law and fact sufficient for class treatment is not the same as a conclusion that what happened to those other workers was entirely irrelevant to the employer's actual or constructive knowledge regarding the plaintiff's alleged overtime work (and, indeed, the latter conclusion would be in conflict with the decision of the Massachusetts Appeals Court remanding the case).

Moreover, Defendant does not identify any harm cognizable under Fed. R. Civ. P. 26(c) relating to its relevancy concerns that its proposed protective order is necessary to prevent.

8

Defendant makes vague references in its pleadings to "discovery abuse." At the hearing on its motion to dismiss, Defendant suggested that the "abuse and harm" that would result from "unfettered access … to all the documents across all the cases" would be that a Pittsfield Plaintiff could utilize a document produced to another Pittsfield Plaintiff during a deposition "to try and elicit admissions about the company's practice to establish … constructive knowledge" (Dkt. No. 52 at 9). This is not an abuse of the discovery process; this is a purpose of the discovery process. Defendant suggests that this could be improper because a Pittsfield Plaintiff could use documents that a deponent has no knowledge about – because they were produced in another Pittsfield case – to try to elicit the damaging admissions. A Rule 26(c) protective order is not an appropriate vehicle to address such a hypothetical concern. A deponent who has no knowledge about a document and is unable to answer questions relating to it can so respond during a deposition. And to the extent that Defendant might disagree that certain testimony from an employee amounts to an admission of its constructive knowledge about a particular Pittsfield Plaintiff's off-the-clock work, Defendant can make that case at summary judgment or trial. Contrary to Defendant's suggestion, having to do so is not an undue burden, but rather, part of the litigation process.

Defendant's supposed confidentiality concerns present an even weaker ground for entry of a protective order such as the one Defendant seeks. As discussed, in light of the Pittsfield Plaintiffs' consents, Defendant no longer maintains that it should be able to limit the Pittsfield Plaintiffs' ability to disseminate the contents of their personnel records to the other Pittsfield Plaintiffs. The material Defendant now wishes to limit the Pittsfield Plaintiffs' ability to disseminate is communications and emails among a particular Pittsfield Plaintiff, management, or any other employee that do not constitute employment applications, employee work

9

evaluations, disciplinary documentation, and promotion, demotion, or termination information, and documents that implicate the privacy interests of employees other than the Pittsfield Plaintiffs.

As to any communications and emails that are not part of the Pittsfield Plaintiffs' personnel records, Defendant argues that the Pittsfield Plaintiffs cannot consent to, or demand that Defendant agree to, the sharing of the records.[7] The problem with Defendant's argument is that, insofar as the documents in question are not part of the Pittsfield Plaintiffs' personnel records, they are not confidential, so the entire premise for Defendant's argument disappears. Defendant's reliance on *Correia v. Town of Framingham*, No. 12-10828-NMG, 2013 WL 952332, at *1 (D. Mass. Mar. 8, 2013), for its claim that it has some undefined "legitimate, protectable interest" in the non-personnel record documents is entirely misplaced. In *Correia*, the plaintiffs were seeking an order compelling the defendant to produce documents, which were in the possession of the defendant's non-party employer, the police department, including the defendant's personnel file and all documents concerning any complaints made against him during his time as a police officer. *Id*. The court allowed the motion relative to the defendant's personnel file because the defendant had the right to request his personnel file from the police department and could then produce it to the plaintiffs pursuant to their Fed. R. Civ. P. 34 request. *Id*. at *3. As to other responsive information, the court denied the request because the information was not within defendant's control, since it was not part of his personnel file, and was, therefore, beyond the scope of a Fed. R. Civ. P. 34 request. *Id*. In other words, *Correia*

---

[7] Again, to the extent that any communications and emails are part of the Pittsfield Plaintiffs' personnel records because they fall within the definition set forth in Mass. Gen. Laws ch. 149, § 52C, Defendant no longer seeks the ability to limit the Pittsfield Plaintiffs' ability to disseminate them in light of the consents.

10

was about an employee's control over documents in his employer's possession, not about an employer's interest in limiting the dissemination of those records.

Defendant's final argument concerns documents that implicate privacy interests of other non-party employees, and Defendant cites to the Massachusetts statute concerning personnel records for support. Mass. Gen. Laws ch. 149, § 52C. As an initial matter, it is unclear whether any of the Pittsfield Plaintiffs' discovery requests call for production of any non-parties' personnel records. To the extent that they do, however, preventing the Pittsfield Plaintiffs to whom such records are produced from disseminating them to other Pittsfield Plaintiffs to whom they are not produced does nothing to address the privacy concerns of any non-party employees in their personnel records. Thus, Defendant's proposed order is not tailored to address these privacy concerns which are supposedly at issue.

IV. Conclusion

In sum, because Defendant has not shown good cause for entry of a protective order limiting the Pittsfield Plaintiffs' ability to disseminate information obtained in discovery to other Pittsfield Plaintiffs, Defendant's motion is denied.

The Pittsfield Plaintiffs have indicated willingness to enter into an agreement that would restrict them from disseminating beyond the Pittsfield Cases information produced by Defendant that amounts to proprietary or confidential information provided that such an agreement has a de-designation procedure. The parties are encouraged to confer and execute a confidentiality agreement covering such materials, which they should then file with the court pursuant to the District Judge's Standing Order Regarding Confidentiality Agreements Between Parties, dated Aug. 12, 2014. Further, to the extent that the Pittsfield Plaintiffs' requests call for production of non-parties' personnel records, the parties are encouraged to include within the confidentiality

agreement provisions tailored to fit the confidentiality interests involved, if any, such as an agreement to redact identifying information. The parties are strongly encouraged to reach an agreement on these issues without the need for further court intervention and to proceed expeditiously with discovery.

It is so ordered.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge